# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AXEL RIVERA RODRIGUEZ,** | : | |
| **Plaintiff** | : | **No. 1:21-cv-00343** |
| | : | |
| v. | : | **(Judge Kane)** |
| | : | |
| **SGT. CLINE, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On February 25, 2021, pro se Plaintiff Axel Rivera Rodriguez ("Rodriguez"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against three defendants employed by Dauphin County Prison, the facility where Rodriguez was incarcerated at all relevant times. (Doc. No. 1.) Presently before the Court is a partial motion to dismiss filed by the defendants. (Doc. No. 14.) For the following reasons, the Court will grant the motion.

**I.     BACKGROUND**

In his complaint, Rodriguez alleges that Defendant Cline ("Cline"), a sergeant in the prison, came to Rodriguez's cell on December 12, 2019, and asked Rodriguez to give him some personal property that was given to Rodriguez when he entered the prison. (Doc. No. 1 at 1.) Cline allegedly stated that if Rodriguez did not give him the property, he would pepper spray Rodriguez. (Id.) Cline then left the cell and returned shortly thereafter with another corrections officer. (Id.) Rodriguez allegedly asked Cline to speak to his supervisor, at which point Cline allegedly pepper sprayed Rodriguez in his face, eyes, and mouth. (Id.) The other officer allegedly observed Cline pepper spraying Rodriguez and then began to kick Rodriguez as Rodriguez lay on his bed. (Id. at 1-2.)

After pepper spraying him, Cline allegedly grabbed Rodriguez, threw him to the floor, sat on his back, and repeatedly punched him in the back of the head. (Id. at 2.) Cline then grabbed

Rodriguez, roughly lifted him from the floor, handcuffed him, put his arms over his head, and then carried him like that with another corrections officer for approximately two minutes. (Id.) The complaint alleges that the assault by Cline caused Rodriguez to have one broken tooth and a fractured right knee. (Id.)

Rodriguez allegedly filed a grievance about Cline's assault on December 28, 2019. (Id. at 3.) After Rodriguez filed the grievance, Defendant Mark Seibert ("Seibert"), a lieutenant in the prison, met with Rodriguez on March 6, 2020. (Id.) Rodriguez told Seibert about the assault and about the physical injuries he suffered as a result. (Id.) Seibert allegedly told Rodriguez he was surprised because Cline's report regarding the incident never mentioned the injuries that Rodriguez suffered or the fact that Cline pepper sprayed Rodriguez. (Id.) Seibert also allegedly stated that the incident could have been prevented if the prison's booking center had more quickly informed prison staff of Rodriguez's mental condition. (Id.)

The complaint alleges that Defendant Briggs ("Briggs"), the prison's warden, reviewed Rodriguez's grievance regarding the assault by Cline and signed off on the denial of the grievance despite having knowledge that the information in Cline's report was false. (Id.) Rodriguez alleges that the warden's decision in not stopping Cline's actions was negligent. (Id.)

The complaint asserts claims against the defendants for violations of Rodriguez's civil rights under 42 U.S.C. § 1983. (Id. at 1.) He seeks monetary damages as well as injunctive relief requiring defendants to be disciplined by the prison and requiring the prison to reconstruct his broken tooth and treat the injuries in his right knee. (Id. at 3.)

Defendants filed a partial motion to dismiss on June 14, 2021, and filed a brief in support of the motion on June 25, 2021. (Doc. Nos. 14, 16.) Defendants seek dismissal of the claims against Defendants Seibert and Briggs based on Rodriguez's failure to allege their personal

involvement in the alleged violations of his civil rights.  (Doc. No. 16 at 4-7.)  Defendants also argue that Seibert and Briggs are entitled to qualified immunity and that they are entitled to immunity as to any state tort law claims.  (Id. at 7-10.)

Rodriguez filed two responses to the motion to dismiss on July 8, 2021 and July 9, 2021.  (Doc. Nos. 17-18.)  The Court will construe these responses collectively as Rodriguez's brief in opposition to the motion to dismiss.  Rodriguez argues that Seibert was personally involved in the alleged constitutional violations because during the March 7, 2020 meeting, Seibert acknowledged that multiple factors likely caused Cline to assault Rodriguez and expressed surprise at the extent of Rodriguez's injuries because that information was not included in Cline's report.  (Doc. No. 17 at 2-3; Doc. No. 18 at 4-5, 9.)  Rodriguez also asserts that Seibert apologized for the assault and coordinated the prison's medical staff in treating Rodriguez's injuries.  (Doc. No. 17 at 3; Doc. No. 18 at 5-6, 9.)  Rodriguez states that after this meeting, he discovered that Seibert falsified records with respect to the assault.  (Doc. No. 17 at 3; Doc. No. 18 at 6, 9.)  Rodriguez argues that Briggs was personally involved because he is responsible for the operation of the prison and the incident occurred while Rodriguez was incarcerated in the prison.  (Doc. No. 18 at 7.)  Rodriguez does not address Defendants' qualified immunity or state law immunity arguments.  (See generally Docs. 17, 18.)

Defendants filed a reply brief in support of the motion to dismiss on July 22, 2021.  (Doc. No. 20.)  Defendants reiterate that the claims against Seibert and Briggs should be dismissed for Rodriguez's failure to allege their personal involvement and that Seibert and Briggs are entitled to immunity.  (Id. at 2-4.)  Defendants also argue that the Court should disregard any facts that are newly alleged in Rodriguez's opposition brief and should disregard any assertion by Rodriguez that the Defendants have engaged in criminal activity.  (Id. at 4-8.)  Finally,

Defendants argue that because Rodriguez is no longer incarcerated in Dauphin County Prison, his requests for injunctive relief are now moot. (Id. at 8-9.) Briefing on the motion to dismiss is now complete and the motion is ripe for the Court's disposition.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

4

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

**B.      Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III.  DISCUSSION

#### A.  Personal Involvement

To state a Section 1983 claim upon which relief may be granted, a plaintiff must allege that the defendant was personally involved in the alleged violation of the plaintiff's rights. See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). Allegations of personal involvement cannot be based solely on a theory of respondeat superior. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence. See id. A defendant's after-the-fact review of a plaintiff's grievance is not sufficient to establish the defendant's personal involvement. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

In this case, Rodriguez's complaint fails to allege that Defendants Seibert and Briggs were personally involved in the alleged violation of his civil rights. Based on the allegations in the complaint, it appears that Seibert and Briggs's only involvement in the facts of this case was that they reviewed Rodriguez's grievances regarding the alleged assault by Cline, which is insufficient to allege personal involvement. See id. The fact that Seibert and Briggs occupied supervisory roles in the prison is also not sufficient to establish their personal involvement, as personal involvement in a Section 1983 action cannot be based solely on a theory of respondeat superior. See Rode, 845 F.2d at 1207. Additionally, to the extent that Rodriguez attempts to base his claims against Seibert on allegations that Seibert falsified documents, such allegations will be disregarded because they were not included in Rodriguez's complaint. See Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (stating that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

The Court will accordingly dismiss the claims against Seibert and Briggs based on Rodriguez's failure to allege their personal involvement in the alleged civil rights violations. Having reached this conclusion, the Court will not consider Defendants' qualified immunity argument. The Court will also not consider Defendants' arguments regarding state tort law claims or criminal claims, as the Court does not construe the complaint as attempting to raise such claims.

Finally, the Court will dismiss Rodriguez's complaint to the extent that it seeks injunctive relief. His request for injunctive relief is moot because he is no longer incarcerated in the Dauphin County Prison. See, e.g., Miller v. Hartwell, 834 F. App'x 692, 694 (3d Cir. 2020); Marshall v. Pa. Dep't of Corr., 499 F. App'x 131, 134 (3d Cir. 2012).

**B.     Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Rodriguez to file an amended complaint that corrects the deficiencies identified herein. Rodriguez is advised that if he files an amended complaint, the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Rodriguez's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that allegedly violated Rodriguez's rights.  Mere conclusory allegations will not set forth a cognizable claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' partial motion to dismiss, (Doc. No. 14), but grant Rodriguez leave to file an amended complaint. An appropriate Order follows.