IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AXEL RIVERA RODRIGUEZ,** | : | |
| Plaintiff | : | No. 1:21-cv-00343 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **SGT. CLINE,** | : | |
| Defendant | : | |

**MEMORANDUM**

This is a prisoner civil rights case in which pro se Plaintiff Axel Rivera Rodriguez ("Rodriguez") alleges that the only remaining Defendant, Sgt. Cline ("Cline"), violated his civil rights by pepper spraying and physically assaulting him during an altercation on December 12, 2019. Presently before the Court is Cline's motion for summary judgment. (Doc. No. 55.) For the following reasons, the Court will deny the motion.

**I.     BACKGROUND**[1]

On December 12, 2019, Rodriguez was incarcerated in Dauphin County Prison on charges of possession of heroin with intent to distribute. (Doc. No. 56 ¶¶ 2–3.) Rodriguez, who is addicted to heroin, was detoxing from heroin in his cell on that date and was feeling sleepy, tired, and disoriented as a result. (Id. ¶¶ 4–8.) Cline came to his cell and asked him to return personal property that purportedly belonged to the prison. (Id. ¶ 9.) Rodriguez refused to return the property and told Cline that he should speak to a supervisor about it. (Id. ¶¶ 10–11.) Cline

---

[1] Unless otherwise noted, the background herein is derived from Cline's Rule 56.1 statement of facts. (Doc. No. 56.) Rodriguez has not filed a response to Cline's statement of material facts in compliance with Local Rule 56.1. Accordingly, the Court deems the facts set forth by Cline to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-01014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020).

told him that if he did not return the property Cline would pepper spray him.  (Id. ¶ 12.)  Cline left the cell at that moment.  (Id. ¶ 13.)

Cline returned to the cell with other staff members shortly thereafter.  (Id. ¶ 14.)  He asked Rodriguez to return the property.  (Id. ¶ 15.)  Rodriguez again refused and told Cline to speak to a supervisor.  (Id. ¶ 16.)  After this refusal, Cline pepper sprayed him.  (Id. ¶ 18.)  Cline then hit Rodriguez while the other officers were securing him.  (Doc. 56-2 at 18.)[2]  The parties also dispute whether Cline kicked Rodriguez during the incident.  (Doc. 56 ¶ 19.)[3]

---

[2]  Cline states that he does not recall whether he hit Rodriguez.  (Doc. 56-4 at 2.)  The Court considers the evidence in the light most favorable to Rodriguez as the non-movant and accordingly credits his assertion that Cline hit him.

[3]  Cline's statement of material facts states that Rodriguez "admit[ted]" that Cline did not kick him in a portion of his deposition.  (Doc. 56 ¶ 19.)  The Court does not agree with Cline that Rodriguez made such an admission during the deposition.  In the relevant portion of the transcript, Rodriguez gives the following testimony:

> Q. And you mentioned in your lawsuit that other people kicked you, some of the other officers kicked you.
>
> A. That's correct.
>
> Q. Okay.  So you allege that Officer Cline hit you and used OC spray on you.  Is that correct?
>
> A. That's correct.

(Doc. 56-2 at 18.)  In no portion of this transcript does Rodriguez directly admit that Cline did not kick him.  Counsel's questions during the deposition sought to elicit responses from Rodriguez admitting that "other officers" kicked him and that Cline allegedly pepper sprayed and hit him, but counsel never asked Rodriguez whether Cline kicked him.  Cline now appears to reason by negative implication that Rodriguez's deposition testimony constitutes an admission by Rodriguez that Cline did not kick him.

The Court declines to give Rodriguez's deposition testimony such an expansive construction.  Considering that Rodriguez was proceeding pro se and through an interpreter during the deposition, the Court does not find it reasonable to conclude by negative implication that Rodriguez "admitted" a fact when counsel did not ask any questions that would directly elicit such an admission.  Counsel could have cured this absence by asking Rodriguez directly

Rodriguez initiated this case by filing a complaint on February 19, 2021, which the Court received and docketed on February 25, 2021. (Doc. No. 1.) The complaint names Cline as a defendant along with Seibert, a lieutenant in the prison, and Briggs, the prison's warden. The complaint assets claims for excessive force in violation of the Fourteenth Amendment. (Id.)

Defendants moved to dismiss the claims against Seibert and Briggs for failure to state a claim upon which relief could be granted on June 14, 2021. (Doc. No. 14.) The Court granted the motion on December 3, 2021, dismissed the claims against Seibert and Briggs without prejudice, and granted Rodriguez leave to file an amended complaint. (Doc. Nos. 25–26.) Rodriguez did not subsequently file an amended complaint, which led the Court to dismiss the claims against Seibert and Briggs without further leave to amend on January 17, 2023. (Doc. No. 59.) The case accordingly proceeded as to Rodriguez's claim against Cline only.

Cline filed the instant motion for summary judgment on November 30, 2022, along with a supporting brief and a statement of material facts. (Doc. Nos. 55–57.) Rodriguez has not responded to the motion, and the deadline for doing so has expired under the Local Rules. The motion is accordingly ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

whether Cline kicked him, but he did not do so. The Court accordingly views the facts in the light most favorable to Rodriguez and concludes that there is a factual dispute as to whether Cline kicked him.

genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

### III.  DISCUSSION

Cline asserts three arguments in support of his motion for summary judgment: (1) that Rodriguez failed to exhaust administrative remedies prior to filing suit; (2) that Rodriguez's claims fail on their merits under the Fourteenth Amendment; and (3) that Cline is entitled to qualified immunity. (Doc. No. 57.) The Court considers Cline's arguments below.

### A.     Exhaustion of Administrative Remedies

The Court first considers Cline's exhaustion argument. Under the PLRA, prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court. See 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020). The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison. See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that must be proven by defendants. See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Cline argues that summary judgment based on a failure to exhaust administrative remedies is appropriate because Rodriguez "admits he did not complete the grievance process available to him" and "claims the process would have been futile." (Doc. No. 57 at 5.)

The Court finds Cline's exhaustion argument unavailing. To begin, Cline does not offer any evidence or law to indicate what administrative processes are available to prisoners in Dauphin County Prison or what steps inmates must take to exhaust those processes. Because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," the Court cannot conclude that Rodriguez failed to exhaust administrative remedies without information on what the prison requires to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 218 (2007).

Moreover, the Court does not find that Rodriguez "admitted" a failure to exhaust administrative remedies. In the relevant portion of Rodriguez's deposition, he testifies as follows:

> Q. [Indicating a physical exhibit] it indicates that you went through two of the processes on the grievance related to the December the 19th of 2019 event.
>
> A. Okay.
>
> Q. Does that surprise you that you didn't complete all four phases?
>
> A. I'm not really surprised because of all the irregularities that they created in my situation. When you look at my documents it will make sense why I wasn't able to continue escalating the complaint.

(Doc. No. 56-2 at 25.) Cline argues that this constitutes an admission by Rodriguez that he did not exhaust administrative remedies because of his belief that exhaustion would be futile on its merits. (Doc. No. 57 at 5.)

The Court disagrees. As noted above, see supra note 3, Rodriguez's equivocal response to a leading question asked through an interpreter during a deposition in which he was proceeding pro se is simply not sufficient to conclude that he admitted a fact. At no point did Rodriguez affirmatively state that he failed to exhaust administrative remedies, nor did counsel ask any questions that could have elicited such an affirmative admission.

Finally, the Court disagrees with Cline's interpretation of Rodriguez's testimony as stating that exhaustion is futile because it would fail on the merits. It appears to the Court that Rodriguez asserts that exhaustion was futile because staff at the prison interfered with his attempts to exhaust administrative remedies. See (Doc. No. 56-2 at 25 ("I'm not really surprised because of all the irregularities that they created in my situation.")). Exhaustion of administrative remedies may be excused "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" because "such interference with an inmate's pursuit of relief renders the administrative process unavailable." See Ross v. Blake, 578 U.S. 632, 642 (2016). Thus, Rodriguez's assertion of staff

interference with his attempts to exhaust administrative remedies may be sufficient to excuse exhaustion. Whether Rodriguez can ultimately prevail on such an argument requires resolution of factual questions that cannot be determined on the present summary judgment record.

In sum, the Court finds that Cline has not met his burden to show that he is entitled to summary judgment on the basis of failure to exhaust administrative remedies and that questions of fact remain as to whether Rodriguez exhausted administrative remedies and whether the prison's grievance process was available to him.

### B. Plaintiff's Excessive Force Claim

Turning to the merits, because Rodriguez was a pretrial detainee when the facts of this case occurred, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Wharton v. Danberg, 854 F.3d 234, 247 (3d Cir. 2017) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)).

Pretrial detainees are entitled to at least as much protection from excessive force as prisoners who have been convicted of a crime. See Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018) (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). Unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause." See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell, 441 U.S. at 520). Thus, pretrial detainees may not be subjected to "excessive force that amounts to punishment." See Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).

8

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard.  See id. (citing Kingsley v. Hendrickson, 578 U.S. 389, 396–400 (2015)). Thus, a pretrial detainee seeking to establish that the use of force was excessive "must show only that the force purposely or knowingly used against him was objectively unreasonable."  See id. (emphasis in original) (citing Kingsley, 578 U.S. at 396–97).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment.  See Kingsley, 578 U.S. at 397 (citing County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)).  Instead, courts and juries must look to the particular facts and circumstances of the case, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  See id. (citing Graham, 490 U.S. at 396).  These circumstances should be considered "from the perspective of a reasonable officer on the scene."  See id. (quoting Graham, 490 U.S. at 396).  A plaintiff can establish that the force used was excessive if he shows that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose."  See id. (quoting Bell, 441 U.S. at 561).

Applying the standard for Fourteenth Amendment excessive force claims to the facts of this case, the Court will deny Cline's summary judgment argument because there are genuine issues of material fact as to whether the force used was excessive in relation to Cline's purpose. It is undisputed that Cline was acting to achieve the legitimate government purpose of getting

Rodriguez to comply with staff orders to turn over personal property. A reasonable fact finder could conclude on the facts of this case, however, that the force Cline used was excessive in relation to that purpose. At the time Cline approached the cell, Rodriguez was sleepy, tired, and disoriented as a result of detoxing from heroin, he was locked in his cell, and he had not threatened Cline with physical force in any way. (Doc. No. 56 ¶¶ 4–8.) There is also no indication in the record that the personal property that Rodriguez refused to hand to Cline posed a danger to Cline or anybody else in the prison. A reasonable fact finder viewing this evidence could conclude that very little, if any, physical force was justified to secure Rodriguez's compliance with Cline's orders. Instead of using a de minimis amount of force, however, Cline pepper sprayed Rodriguez and may have additionally punched and kicked him. The Court accordingly finds that there is a genuine issue of material fact as to whether Cline used excessive force that precludes the entry of summary judgment.

### C. Qualified Immunity

The Court will also deny Cline's assertion of qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011) (internal quotation marks omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated

differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 583 U.S. __, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). In making this determination, the Court looks to applicable Supreme Court precedent, but if none exists, "a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." See id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

The United States Supreme Court's decision in White v. Pauly, 580 U.S. 73 (2017), clarifies the Court's inquiry. In that opinion, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." See id. at 79 (internal quotation marks omitted) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)). The Supreme Court reiterated that the clearly established law "must be 'particularized' to the facts of the case," and cautioned that the presentation of a unique set of facts by a case is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. See id. at 79–80 (internal quotation marks omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, a constitutional deprivation that occurs under unique factual

11

circumstances does not necessarily warrant an automatic grant of qualified immunity. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). There may be the rare "obvious case," where "a body of relevant case law" is not necessary, see Brosseau v. Haugen, 543 U.S. 194, 199 (2004), especially when the case in question presents "extreme circumstances" to which "a general constitutional rule already identified in the decisional law may apply with obvious clarity." See Taylor v. Riojas, 592 U.S. __, 141 S. Ct. 52, 53–54 (2020) (internal citation and quotation marks omitted) (quoting Hope, 536 U.S. at 741).

In this case, Cline asserts that he is entitled to qualified immunity because clearly established precedent recognizes that prison officials may use pepper spray when reasonably necessary to restore order in a prison. (Doc. No. 57 at 12–13.) Cline's argument overlooks the fact that there is record evidence from which a reasonable finder of fact could conclude that Cline hit and kicked Rodriguez in addition to pepper spraying him. At the time of the incident, it was clearly established that an officer's use of physical force that is excessive in relation to the situation faced by the officer violates the Fourteenth Amendment. See, e.g., Kingsley, 576 U.S. at 392, 397–98. The Court finds there is sufficient evidence in the record that Cline violated this right to deny his assertion of qualified immunity at this stage and allow Rodriguez's claim to go to trial.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Cline's motion for summary judgment. (Doc. No. 55.) In order to facilitate a timely and efficient resolution of this matter, the Court will require the parties to file a joint status report indicating whether they wish to have this case referred for mediation in the Court's Prisoner Litigation Settlement Program. If this case is not

resolved through mediation, the Court will schedule an evidentiary hearing on the issue of administrative exhaustion at which the Court will act as the finder of fact.  See Small v. Camden Cnty., 728 F.3d 265, 270–71 (3d Cir. 2013).  An appropriate Order follows.

                                                  s/ Yvette Kane              
                                                  Yvette Kane, District Judge
                                                  United States District Court
                                                  Middle District of Pennsylvania